UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LINDA HANCOCK, a single individual,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>THE STATE OF WASHINGTON; THE WASHINGTON STATE HORSE RACING COMMISSION; ROBERT LEICHNER, individually and as an agent of the Washington State Horse Racing Commission; ROBERT LOPEZ, individually and as an agent of the Washington State Horse Racing Commission,<br><br>　　　　　Defendants. | No. CV06-0669 MJP<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on motion for summary judgment by Defendants State of Washington, Washington State Horse Racing Commission (the "Commission"), Robert Leichner and Robert Lopez (collectively "Defendants"). Having reviewed the record and the documents submitted by the parties (Dk. No. 1, 7, 20, 21, 30–33, 35–45), the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion.

**Background**

This suit arises out of Hancock's tenure at the Commission. Prior to this suit, Hancock worked at the Commission for twenty years. (Hancock Decl. ¶ 1) In 2002, Defendant Robert

ORDER - 1

Leichner became Executive Secretary of the Commission; he was previously Chief of the Washington State Patrol (the "Patrol"). (Leichner Dep. 7:1–4, 10:6–13) Leichner appointed Defendant Robert Lopez as Deputy Secretary; Lopez was formerly Assistant Chief of the Patrol. (Lopez Dep. 7:5–15) At that time, Hancock had the title of Investigator I and was responsible for monitoring all off-track betting sites in eastern Washington. (Hancock Decl. ¶ 2) Hancock alleges that her problems began after she asserted her seniority rights to work "Class C" horse races over co-worker Hal Behme, a former Patrol officer. (Id. ¶ 3) Hancock received the Class C shifts, but shortly thereafter received a dramatically different off-track betting site inspection schedule. (Id. ¶ 3–4) She alleges she was required to inspect two sites per day and that the long driving obligations would aggravate her back injuries. (Id. ¶ 4) She then filed multiple complaints with her union, including claims for gender bias and discrimination. (Id. ¶ 5–6) Steve Hiatt was a union steward at that time, and his declaration states that Hancock's immediate supervisor Darold Weeks (another former Patrol officer) used the new schedule to "micro-manag[e]" Hancock and "to push [her] out." (Hiatt Decl. ¶ 6–7) Hiatt further states that the western Washington Inspector I, Basil Frazier, was not given the same regimented schedule to follow. (Id.)

In response to Hancock's complaints, Leichner first appointed Weeks to investigate the discrimination claim, even though he was the named subject, and then appointed Behme, even though he and Hancock had just had a dispute over seniority rights. (Pulliam Decl. ¶ 2; Lopez Dep. 64:1–20; Hancock Dep. ¶ 8) Leichner also stated that the investigation would not take place until racing season began in the spring. (Zeeck Decl. Ex. F) Hancock then filed a complaint with the Human Rights Commission in December 2003. (Hancock Decl. ¶ 9) Thereafter, Leichner brought in an independent investigator, Nani McLaughlin, to conduct the inquiry off-season. (Zeeck Decl. Ex. G)

In January 2004, Hancock filed four whistleblower complaints with the State Auditor's office concerning improprieties by the Commission. (Hancock Decl ¶ 10; Miller Decl. ¶ 3) The improprieties included the refusal to investigate alleged thefts at off-track betting sites, the failure to

ORDER - 2

1  insure all race participants were duly licensed, the failure to monitor properly all off-track betting sites,
2  and an improper intervention by Leichner into the investigation of illegal drug use by one race horse.
3  (Id.) Sandra Miller, the Auditor employee investigating the claims, states in her declaration that
4  Leichner and Gary Christensen, Chair of the Commission, acted improperly during her investigation
5  and that they were aware that Hancock was the whistleblower. (Miller Decl. ¶ 8–16 & Attachments 1
6  & 2)

7  During this time period, the Commission was undergoing financial problems due to the decline
8  in taxes generated by live horse racing in Washington. (See Motion at 3–6, 8–10 & accompanying
9  notes) Leichner asserts that the decision to RIF (reduction in force, i.e., to terminate) the Inspector I
10 positions (Hancock and Frazier) was due to this distress. (Id. at 8) Hancock points out, however,
11 that Leichner, his personal secretary, and Lopez received salary increases during this time. (See Resp.
12 at 8 & n.34–37) Further, Frazier states in his declaration that Leichner promised him the Clerk of
13 Scales position after the Inspector I jobs were eliminated. (Frazier Decl. ¶ 5; Hancock Decl. ¶ 11)
14 After receiving notice of the RIF, Hancock filed a whistleblower retaliation complaint in July 2004.
15 (Hancock Decl. ¶ 12–13)

16 After the Investigator I positions were eliminated, Hancock applied, and was hired, for the
17 Investigator II position. (Hancock Decl. ¶ 15) The decision to hire Hancock was made by the
18 Department of Personnel, not the Commission, and Hiatt states that Lopez tried to prevent Hancock
19 from being hired. (Id.; Hiatt Decl. ¶ 8) Hancock claims that due to continued poor treatment by
20 Defendants, she left her position in the spring of 2006. (Hancock Decl. ¶ 16–17) On May 12, 2006,
21 she filed suit against Defendants.

22 **Analysis**

23 I.   Summary Judgment Standard

24 Summary judgment is not warranted if a material issue of fact exists for trial. Warren v. City
25 of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996). The underlying

ORDER - 3

1   facts are viewed in the light most favorable to the party opposing the motion. <u>Matsushita Elec. Indus.</u>

2   <u>Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). "Summary judgment will not lie if . . . the

3   evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v.</u>

4   <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The party moving for summary judgment has the

5   initial burden to show the absence of a genuine issue concerning any material fact. <u>Adickes v. S.H.</u>

6   <u>Kress & Co.</u>, 398 U.S. 144, 159 (1970). Once the moving party has met its initial burden, the burden

7   shifts to the nonmoving party to establish the existence of an issue of fact regarding an element

8   essential to that party's case, and on which that party will bear the burden of proof at trial. <u>Celotex</u>

9   <u>Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986). To discharge this burden, the nonmoving party cannot

10  rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. <u>Id.</u>

11  at 324.

12  II.     <u>Gender Discrimination</u>

13          Defendants seek summary judgment on Hancock's claims of gender discrimination. To make

14  out a case of gender discrimination under Title VII,[1] a plaintiff must show she is a member of a

15  protected class and was treated less favorably than a similarly situated non-protected employee.

16  <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973); <u>Cornwell v. Electra Cent. Credit</u>

17  <u>Union</u>, 439 F.3d 1018, 1028 (9th Cir. 2006). If plaintiff successfully presents a prima facie case, the

18  burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the action.

19  411 U.S. at 802–03. If defendant can do so, the burden shifts back to the plaintiff, who may rebut

20  defendant's proffered reason as mere pretext. <u>Id.</u> at 804. Once the plaintiff has made out a prima

21  facie case, the Ninth Circuit has set a high bar for summary judgment. <u>See, e.g.</u>, <u>Lindsey v. SLT L.A.,</u>

---

[1] Because Washington courts look to federal law when analyzing discrimination and retaliation claims, Hancock's Washington state law claims should be considered together with her federal claims. <u>See</u> <u>Stegall v. Citadel Broad. Co.</u>, 350 F.3d 1061, 1065 (9th Cir. 2003) (citing <u>Little v. Windermere Relocation, Inc.</u>, 301 F.3d 958, 969 (9th Cir. 2002); <u>Graves v. Dep't of Game</u>, 76 Wn. App. 705, 887 P.2d 424, 428 (Wash. Ct. App. 1994)).

ORDER - 4

1 LLC, 447 F.3d 1138, 1148, 1153 (9th Cir. 2006) (although summary judgment may be granted when

2 plaintiff's pretext evidence is "totally lacking," in general "discrimination cases such as this one present

3 precisely the kinds of complex factual questions best addressed by juries").

4 Hancock is female and therefore a member of a protected class. She also recounts a series of

5 adverse employment actions that satisfy this element. See Resp. at 12 & Hancock Decl. Most

6 importantly, her schedule was overhauled and her position was eliminated. Id. Defendants assert

7 Hancock received the same treatment as Frazier (the male Inspector I) so there was no disparate

8 treatment. But Hancock has presented sufficient evidence to cast doubt on this assertion, namely that:

9 1) Frazier was not subject to Hancock's level of scrutiny and regimentation in scheduling, 2) he was

10 offered training opportunities that she was not, and 3) he was promised a new position when the

11 Inspector I positions were eliminated and she was not. Hancock has made out a prima facie case of

12 gender discrimination.

13 Defendants present the Commission's financial predicament as the non-discriminatory reason

14 for these actions. Hancock has presented evidence, however, that Leichner and others received pay

15 increases during this time. Also, the evidence used to establish the prima facie case—differential

16 treatment of Hancock and Frazier—may likewise be used as evidence of pretext. Lindsay, 447 F.3d at

17 1148. Given the especially high bar to summary judgment in employment discrimination cases,

18 Hancock has met her burden of demonstrating genuine issues of material fact on these questions.

19 Defendants' motion for summary judgment on Plaintiff's gender discrimination claims is

20 **DENIED**.

21 III. Retaliation

22 Defendants seek summary judgment on Hancock's retaliation claims. To make out a prima

23 facie case of retaliation under Title VII, a plaintiff must demonstrate: 1) she engaged in a protected

24 activity; 2) she suffered an adverse employment action; and 3) there was a causal link between her

25 activity and the employment decision. Stegall v. Citadel Broad. Co., 350 F.3d 1061, 1065–66 (9th

ORDER - 5

Cir. 2003). If a plaintiff is able to assert a prima facie retaliation claim, the same burden shifting scheme articulated in McDonnell Douglas applies: defendant must "articulate a legitimate, non-discriminatory reason for the adverse employment action." Manatt v. Bank of Am., N.A., 339 F.3d 792, 800 (9th Cir. 2003). If defendant articulates such a reason, plaintiff "bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive." Stegall, 350 F.3d at 1066.

Hancock filed a gender discrimination grievance with her union in 2003 and filed a complaint with the Human Rights Commission in January 2004. The protected activity prong is easily satisfied.

To satisfy the adverse action requirement, an employee must demonstrate "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern & Santa Fe Ry. v. White, 126 S. Ct. 2405, 2415 (2006). The Supreme Court noted that "the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." Id. at 2416. Hancock cites a variety of adverse actions she encountered, see Resp. at 12, most of which satisfy this element under White's liberal interpretation.

Plaintiffs in retaliation cases need only show that retaliation was one of the motivating factors behind the adverse action, and the causal link may be shown by either direct or circumstantial evidence. See Stegall, 350 F.3d at 1068. The Ninth Circuit has held that timing alone can satisfy the causal link requirement. Id. at 1069 ("Temporal proximity between protected activity and an adverse employment action can by itself constitute sufficient circumstantial evidence of retaliation in some cases."). The timeline in this case constitutes circumstantial evidence of a causal link. Furthermore, the declarations presented by Hancock, particularly Miller's declaration about Leichner's reaction to the investigation, presents further evidence linking the two events. Hancock has shown a sufficient causal link to survive summary judgment.

1    To the extent that Defendants offer the Commission's financial cutbacks as a legitimate reason

2 for these action, Hancock's claims of pretext rebut their assertions for the reasons stated in Part II.

3    Defendants' motion for summary judgment on Plaintiff's retaliation claims is **DENIED**.

4 IV.    First Amendment / § 1983

5    Hancock alleges Defendants retaliated against her for reporting the Commission's wrongdoing

6 to the State Auditor's office. She claims that this retaliation violated her First Amendment rights and

7 is actionable under § 1983. Defendants seek summary judgment on this issue, asserting that

8 Hancock's First Amendment claim fails as a matter of law.

9    The elements required to establish a First Amendment claim against a public employer are

10 similar to retaliation claims: 1) the employee engaged in constitutionally protected speech; 2) the

11 employer took adverse employment action against the employee; and 3) the employee's speech was a

12 "substantial or motivating" factor in the adverse action. Freitag v. Ayers, 468 F.3d 528, 543 (9th Cir.

13 2006).

14    To determine whether an employee's speech is protected, the court first asks whether the

15 employee spoke as a citizen on a matter of public concern. Garcetti v. Ceballos, 126 S.Ct. 1951, 1958

16 (2006). If the answer is no, there is no First Amendment claim. Id. If the answer is yes, the court

17 moves to the second question: whether the relevant government entity had an adequate justification

18 for treating the employee differently from any other member of the general public.

19  Id. Whether speech is protected is a question of law for the court. Connick v. Myers, 461 U.S. 138,

20 148 n.7 (1983).

21    Defendants all but concede that Hancock's whistleblower complaint to the State Auditor

22 concerning Commission improprieties is protected speech. See Reply at 6 n.24 (noting that Hancock's

23 complaint was to an outside entity, unlike Garcetti); see also Freitag, 468 F.3d at 545 (complaints of

24 sexual harassment at prison to state senator and state inspector general were not pursuant to official

25 duties and were protected). If an employee speaks on an issue that she learns of through her

ORDER - 7

employment, it does not mean that she is not speaking as a citizen on a matter of public concern. Defendants do not put forth a meaningful balancing argument, and Plaintiff correctly notes that it would be inconsistent with their arguments that Hancock's termination was unrelated to her whistleblower complaints. Hancock's speech is protected.

As described in Parts II and III, Hancock has presented sufficient facts to go forward that she was subject to adverse action.

Whether an employee's speech is a "substantial or motivating" factor is a question of fact, which the Ninth Circuit has said "normally should be left for trial." Ulrich v. City & County of San Francisco, 308 F.3d 968, 979 (9th Cir. 2002). Direct or circumstantial evidence can satisfy this element, and "[g]enerally, a plaintiff need only offer 'very little' direct evidence of motivation to survive summary judgment on this element." Id. at 980. Hancock meets her burden here for the same reasons that she satisfies the causal link prong of her retaliation claim: she presents sufficient direct and circumstantial evidence linking her whistleblowing and adverse action to satisfy the very lenient summary judgment standard.

Defendants' motion for summary judgment on Plaintiff's First Amendment claim is **DENIED**.

V.   Constructive Discharge

Hancock did not include a separate claim for constructive discharge in her complaint, but the parties both addressed this claim. Given the facts alleged and Rule 8(f)'s requirement of construing all pleadings to do substantial justice, the Court holds that Hancock's complaint gave "enough details so as to provide defendant and the court with a fair idea of the basis of the complaint and the legal grounds claimed for recovery," Self Directed Placement Corp. v. Control Data Corp., 908 F.2d 462, 466 (9th Cir. 1990). The Court can reach the constructive discharge claim in this motion.

To establish a constructive discharge claim under Washington law, "the employee must show: (1) a deliberate act by the employer that made his working conditions so intolerable that a reasonable person would have felt compelled to resign; and (2) that he or she resigned because of the conditions

ORDER - 8

and not for some other reason." Washington v. Boeing Co., 105 Wn. App. at 15. A resignation is "presumed to be voluntary, and it is incumbent upon the employee to introduce evidence to rebut that presumption." Sneed v. Barna, 80 Wn. App. 843, 849 (1996). The Ninth Circuit has held that the intolerable conditions requirement is a high standard. Brooks v. City of San Mateo, 229 F.3d 917, 930 (9th Cir. 2000) ("[C]onstructive discharge occurs when the working conditions deteriorate, as a result of discrimination, to the point that they become sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer."). Further, plaintiff must demonstrate that the intolerable and discriminatory conditions continue up to the point when he or she quits the job. See Steiner v. Showboat Operating Co., 25 F.3d 1459, 1465–66 (9th Cir. 1994).

Hancock worked in the Inspector II role throughout the 2005 season, and she resigned in the spring of 2006 before the racing season began. But the declarations and memorandum are almost completely silent on the conditions of her employment after 2004—and completely silent on any specific instances of workplace abuse. Defendants correctly note that it is not sufficient for Hancock to argue that her dislike of Lopez and Leichner amount to constructive discharge. See Hancock Decl. ¶ 17 ("I did not believe I could handle another season working with Mr. Lopez"). Moreover, Hancock expressly states that two of the reasons she left the Inspector II position were the commute to western Washington and a decline in her health. Id. at ¶ 15–17. Hancock seeks to forestall summary judgment by repeatedly stating that whether the conditions were intolerable is a question of fact for the jury, but Hancock must put forth some competent evidence to support her claim. See Sneed, 80 Wn. App. at 850. As a result of this failure, Hancock has failed to present evidence to rebut the presumption that her resignation was voluntary.

Defendants' motion for summary judgment on Plaintiff's constructive discharge claim is **GRANTED**.

VI.     Intentional Infliction of Emotional Distress, aka Outrage

ORDER - 9

1  To establish liability for intentional infliction of emotional distress, the first element that a
2  plaintiff must demonstrate is that defendant engaged in "extreme and outrageous conduct."
3  <u>Washington v. Boeing</u>, 105 Wn. App. 1, 17 (2000). The alleged conduct must be "so outrageous in
4  character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be
5  regarded as atrocious, and utterly intolerable in a civilized community." <u>Id.</u> In the few cases that
6  Washington courts have allowed this claim to get to a jury in the employment context, plaintiffs cited
7  incredibly derogatory comments from workplace supervisors. <u>See</u> <u>Robel v. Roundup Corp.</u>, 148 Wn.
8  2d 35, 52 (2002) (citing "racial jokes and slurs" and "the C word" as cases where reasonable minds
9  could disagree on outrageousness).
10  Even when the events of this case are viewed in the light most favorable to Hancock's case,
11  she cannot meet this high burden. Failing to promptly or properly investigate Hancock's
12  discrimination claim does not meet this very high standard, nor does declining to offer her training
13  opportunities, forcing her to travel long distances to make inspections, or terminating her employment.
14  Reasonable minds therefore cannot disagree that this conduct is not so extreme and outrageousness as
15  to allow liability.
16  Defendants' motion for summary judgment on Plaintiff's intentional infliction of emotional
17  distress claim is **GRANTED**.
18  VII.   <u>Negligent Infliction of Emotional Distress</u>
19  In Washington, "[a]n employee may recover damages for emotional distress in an employment
20  context but only if the factual basis for the claim is <u>distinct</u> from the factual basis for the discrimination
21  claim." <u>Haubry v. Snow</u>, 106 Wn. App. 666, 678 (2002) (emphasis added). State courts have
22  dismissed negligent emotional distress claims when the alleged conduct is not distinct because such
23  damages are recoverable under the discrimination claim. <u>See</u> <u>Bishop v. State</u>, 77 Wn. App. 228,
24  234–35 (1995). Hancock asserts that the "cruel and specific manner" of Defendants' discrimination
25  and retaliation allow her claim to survive. Plaintiff's assertion has no basis in Washington law, and I

ORDER - 10

can see no reason to variate from the rule that negligent emotional distress claims collapse into discrimination claims.

Defendants' motion for summary judgment on Plaintiff's negligent infliction of emotional distress claim is **GRANTED**.

VIII.  Disability Discrimination / ADA

Plaintiff's ADA disability claim fails for several reasons. First, Washington is immune from suit for ADA claims under the Eleventh Amendment. See Univ. of Alabama v. Garrett, 531 U.S. 356 (2001). Second, ADA claims are limited to individuals with disabilities that are permanent and "substantially limit major life activities." See Toyota v. Williams, 543 U.S. 184 (2002). Hancock has not put forth any evidence to show that her neck and back pain reaches this threshold, nor that this disability is linked to any failure to accommodate. Moreover, Hancock's disability claim fails even if under state law where Washington is not immune from suit and may not follow the federal definition of disabled.[2] Plaintiff asserts that the questionnaire mailed to her doctor and Lopez's comments about "special accommodations" is sufficient evidence to withstand summary judgment. See Resp. at 24. Plaintiff fails to lay out the elements of a state law disability claim or meaningfully rebut Defendants' arguments. Such evidence is insufficient to meet her burden, and even without the legal infirmities of Garrett and Williams, this claim would not present a genuine issue of material fact.

Defendants' motion for summary judgment on Plaintiff's Americans with Disabilities Act claim and WLAD Disability claim is **GRANTED**.

IX.  Motions to Strike

Defendants have moved to strike numerous parts of the declarations presented along with Hancock's Response. Many of these are trivial and/or unfounded. For instance, Defendant makes repeated hearsay objections to material that either: 1) is not being offered in evidence to prove the

---

[2] See Wash. SB 5340 (2007) (amending RCW 49.60.040 and overruling McClarty v. Totem Electric, 157 Wn. 2d 215)

ORDER - 11

truth of the matter asserted," Fed. R. Evid. 801(c) (emphasis added); 2) comes from a party opponent under FRE 801(d)(2)(D);[3] or 3) could be presented in an admissible form at trial, see Fonseca v. Sysco Food Servs. of Ariz., 374 F.3d 840, 846 (9th Cir. 2004). Likewise, most of Defendants' objections on the grounds of relevance, conclusory statement, and lack of foundation can be charitably described as tenuous. Even taking into account Defendants' few meritorious claims (such as the double-hearsay of Pulliam Decl. ¶ 3 & Ex. B), their objections are moot as summary judgment would still be inappropriate as to the gender discrimination, retaliation and First Amendment claims, even if these materials were removed from the record.

The Clerk is directed to send copies of this order to all counsel of record.

Dated: May __7__, 2007.

    /s/ Marsha J. Pechman
Marsha J. Pechman
United States District Judge

---

[3] Leichner and Lopez are direct party opponents. Statements from Christensen and Weeks can be imputed to the Commission because they were made during the existence of their employment relationship and concerned matters within the scope of their employment.

ORDER - 12